**IN THE UNITED STATES DISTRICT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**CASE NO.: 19-cv-61422-CANNON/Hunt**

RANDY ROSENBERG, D.C., P.A.
a/a/o Danielle Russell; and on  behalf of
itself and all others similarly situated,

                                                  CLASS REPRESENTATION

        Plaintiff,

v.

GEICO GENERAL INSURANCE COMPANY,

        Defendant.

_____/

**PLAINTIFF'S UNOPPOSED MEMORANDUM OF LAW IN SUPPORT OF**
**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION**
**SETTLEMENT**

Plaintiff, Randy Rosenberg, D.C., P.A., files this Unopposed Memorandum of Law in Support of the Parties' Joint Motion for Preliminary Approval of Class Action Settlement, ECF No. 217, and states the following:

## I.   INTRODUCTION

This Action and the underlying issues in this matter have been long-standing and hard fought and are clearly ripe for resolution. Litigation concerning the BA Issue[1] finally and globally resolved through the Settlement discussed below has been prosecuted in this District and Florida courts since at least 2016. Plaintiff filed this current putative class action on this issue on May 7, 2019, alleging a dispute over one provision in the Defendant's form personal injury protection ("PIP")[2] insurance policy ("Policy") and whether the Policy language provides an extra 20% in No-Fault Coverage for the billed amount of the charges. After substantial investigation and contentious litigation, on February 28, 2022, the Parties executed a final Settlement Agreement and Release ("Settlement" or "Agreement"), attached to their Joint Motion for Preliminary Approval as Exhibit 1. *See* ECF No. 217. The Agreement incorporates a proposed Direct Mail Notice (Ex. A), Claim Form (Ex. B), Preliminary Approval Order (Ex. C), Final Approval Order (Ex. D) and Tolling Letters (Ex. E).

"Federal courts have long recognized a strong policy and presumption in favor of class action settlements." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011). The core of the Settlement is Defendant's agreement to provide complete substantive relief to Class Members. Defendant has agreed to pay each Class Member who submits a Valid Settlement Claim 100% of the relief requested in the case, plus 10% interest and $9 per claim

---

[1] Unless otherwise defined in this Motion, all capitalized terms in this memorandum have the meanings set forth in the Agreement.

[2] Throughout this memorandum, "PIP" refers to the insurance coverage under Section 627.736, Florida Statutes.

submission via First Class Mail. Under the Settlement, Defendant has also agreed to adjust claims relating to the BA Issue in the same manner going forward, and it has agreed to pay all Settlement administration costs including providing notice of the settlement electronically and via First-Class Mail, and administration of all claims. If finally approved, this Settlement will potentially provide relief to tens of thousands of potential Settlement Class Members and will finally conclude this extensive and lengthy litigation on the BA Issue once and for all.

As set forth below and in the submissions accompanying the Parties' Joint Motion for Preliminary Approval of Class Action Settlement, the Court should preliminarily approve the proposed Settlement, certify the proposed Settlement Class, approve the manner and content of the proposed Class Notice and Claim Form, establish the deadlines for Settlement administration, and set the date for the Final Approval Hearing.

## II. LITIGATION AND SETTLEMENT OF THE CASE

### A.   Fact and Claim Investigation

This was clearly not a file and settle case. This case has been thoroughly investigated and litigated. The "BA Issue" resolved through the Settlement has led to "voluminous lawsuits" in state and federal courts. ECF No. 144-1 at 69:5-10, 141:7-25.

The "BA Issue," which is defined in the Agreement, refers to the longstanding dispute (which this case typifies) regarding Defendant's PIP Policy endorsement language (a.k.a., "BA language"), stating, "A Charge submitted by a provider, for an amount less than the amount allowed above, shall be paid in the amount of the charge submitted" and The GEICO Companies' utilization of the code "BA" when determining and issuing payment in response to claims. Agreement § II ¶ A 3; ECF No. 26 at ¶ 17.   Class Counsel have literally spent years in highly contentious litigation on the BA Issue since it arose in *A&M Gerber Chiropractic, Inc. a/a/o Conor*

*Carruthers v. GEICO General*, Case No. CACE 16-016813 (05) (Fla. 17th Cir. Ct.), which was removed to this Court in November 2016, litigated for years, and eventually (based on the Eleventh Circuit's ruling) remanded in July 2019 after a judgment in plaintiff's favor that was overturned by the Eleventh Circuit Court of Appeals because the plaintiff *Gerber* lacked federal standing; the Eleventh Circuit did not rule on the merits. *See A&M Gerber Chiropractic, Inc. v. GEICO General*, No. 0:16-cv-62610-BB (S.D. Fla. July 25, 2019, ECF No. 223).   Class Counsel have also been litigating other cases on the BA Issue as set forth in the Settlement, which are encompassed in the Settlement. *See* Agreement § I A ¶¶ 6-7.

Each of these matters has been hard fought. And this case has been no different. Plaintiff's claims and legal theories and the Parties' evidence have been extensively and contentiously tested, and the Parties clearly litigated this case preparing for trial. There were several complaints (ECF Nos. 1-2, 26); two motions for remand (ECF Nos. 7, 156); two motions to dismiss (ECF Nos. 9, 33); four motions to compel (ECF Nos. 39, 92, 120, 132); a highly contested class certification motion (ECF Nos. 144 & 200); bilateral motions in limine and contentious motions to strike or exclude evidence and witnesses (ECF Nos. 160, 162, 166-67, 190-91); and cross-motions for summary judgment (ECF Nos. 202, 203). Before the Settlement was finally reached, the Parties had also submitted proposed jury questions and trial exhibit lists and entered a pretrial stipulation to ready the case for trial. ECF Nos. 187-89.

Throughout this Action, each Party engaged in extensive investigation and discovery to explore and develop its position that in turn led to a thorough review of the strengths and weaknesses of each one's position prior to reaching a compromise of the Action. Plaintiff issued interrogatories (ECF Nos. 39-2, 72-2) and multiple requests to produce, which as stated above, were hotly contested. *See* ECF Nos. 39-1, 72-1, 92-3, 148-6 at Ex. A thereto. Defendant eventually stipulated to produce on September 1, 2020, electronic claims data in 7-8 massive spreadsheets

with millions of data lines, for a five-year period dating back to 2013, and produced on November 20, 2020, a sampling of 383 hardcopy claims files, and eventually produced 247 corresponding lawsuit filings and related materials. *See* ECF Nos. 112, 113, 119; and ECF No. 148-6 at ¶¶ 13-20.

These materials were complex and were produced over a series of months, and it took months to review and digest them. *See* ECF Nos. 95 (Ex. E-G), 112, 114. Just retrieving specific historical claims files was an arduous, time-consuming task. *See* ECF No. 72-2 at ¶¶ 7-13. The review by Defendant alone was estimated to be of over 400,000 pages of hardcopy material and millions of lines of data across over tens of thousands of claims. ECF Nos. 88 at ¶ 12, 155-5 at ¶ 17. Class counsel in turn had to review these materials extensively and analyze them including comparing the data from the actual files to the electronic data provided by Defendant; and counsel eventually took the depositions of Defendant's Fed. R. Civ. P. 30(b)(6) designees thereon. *See* ECF Nos.148-2, 148-4.

The extensiveness and complexity of the materials produced also necessitated that each side consult experts to analyze the materials produced and the key contested facts underlying the legal issues in the case and create certain assumptions derived from the comparison of the claim file data to the electronic data. *See* ECF Nos. 92-1 at 59:11-62:16, 148-6 at ¶¶ 13-16. Each side in turn submitted expert reports and rebuttal expert reports on class and other issues. *See* ECF Nos. 148-5, 151-4, 155 (Ex. C), 159-1.

### B.   Arms-Length Settlement Negotiations

Against this backdrop of extensive investigation and discovery, the Settlement was the product of informed, arm's length negotiations initially aided by a neutral mediator and eventually resolved through experienced counsel. Settlement discussions have taken place off and on formally and informally beginning early in the case. *See* ECF Nos. 55-56. The Parties attended mediation

with nationally renowned and experienced mediator Rodney Max on January 8, 2020, which, because of the Pandemic, was attended telephonically by each Party's representatives and counsel. ECF Nos. 58-60, & 148-2 at 144:2-5. No settlement was reached. The Parties held another mediation with Mr. Max on January 30, 2020. Again, no compromise was reached. The Parties continued to communicate through Mr. Max through March 2021, at which time an impasse was declared. ECF No. 131.

Thereafter, the Parties stood firm on their positions through the hard-fought motion practice and discovery stated above. But interest in settlement continued. Defendant also added additional counsel who assisted in pursuing a potential global settlement on the BA Issue. *See* ECF No. 213 at ¶ 5. Settlement talks resumed; but reaching and effectuating a well-crafted settlement proved difficult. Additional counsel (who had handled a recent PIP class action in front of Judge Altonaga, *Gregory Haskin Chiropractic Clinics, Inc., et al. v. GEICO Indemnity Co., et al.*, No. 17-62462-CIV-ALTONAGA/Seltzer (S.D. Fla.))[3] had to get up to speed on ongoing settlement negotiations, the complexities of the issues and parties involved, and the extensive materials required for submission in connection with a proposed global class settlement for *all* GEICO entities, all tailored to the legal claims raised in this case and related BA Issue cases that were pending in state and federal courts. *Id*. at ¶¶ 4, 7-8.

After the foregoing thorough investigation and extensive work by the Parties including countless oral and written negotiations and exchanges of several draft agreements, proposed orders, proposed claim forms, and proposed class notices, on February 28, 2022, the Parties executed the Agreement and finalized the exhibits, now proposed for preliminary approval.

---

[3] *See* Exhibit A (*Haskin* Preliminary Approval Order); Exhibit B (*Haskin* Final Approval Order).

## III.  SETTLEMENT TERMS

### A.  Settlement Class

To effectuate the Settlement, and for settlement purposes only, the Settlement provides that the Class Representative (Plaintiff here) will file an amended complaint in this Action naming all of the GEICO Companies. Agreement § III ¶ D.   Under the Settlement, the Parties propose that the Court certify for purposes of settlement only the following "Settlement Class" or "Settlement Class Members":

> All health care providers who hold an assignment of benefits of the Policy from an individual insured by one of the GEICO Companies and, pursuant to that assignment, submitted a claim for reimbursement of no-fault benefits to one of the GEICO Companies during the Class Period for a charge in an amount less than the schedule of maximum charges as defined by Section 627.736(5)(a)1., Florida Statutes, where the applicable GEICO Company utilized the reason code "BA" to issue payment to the provider for 80% of the amount charged for the claim.
>
> Excluded from the Settlement Class are: (1) The GEICO Companies, any entities in which The GEICO Companies have a controlling interest, and all of their legal representatives, heirs and successors; and (2) members of the judiciary for the United States District Courts of Florida.

Agreement (§ III ¶ A 1).

The "Policy" included is the Florida Motor Vehicle Insurance policy underwritten by one of the GEICO Companies in Florida and which contains the No-Fault Policy Endorsement indicated by the acronyms, "FLPIP (01-13)," "FLPIP (07-15)" and "FLPIP (01-18)" and such later Endorsements containing the "BA" language, at issue in the case. *See* Agreement § III. ¶ A, n. 2; ECF No. 187 at ¶¶ 5d, 5i, 5m; ECF No. 26 at ¶ 18.

**B.    Settlement Relief**

Plaintiff's central damage allegation was that Class Members were underpaid by 20% of the amounts they billed for charges covered under the Policy based on the BA Issue and language. *See* ECF No.144 at 3, 6, 9; ECF No. 26 at ¶¶ 19, 26, 33. The Settlement directly addresses the claimed harm and is commensurate with what a Settlement Class Member might recover on an individual basis through a PIP demand letter. *Compare* § 627.736(10)(d), Fla. Stat.   Pursuant to the Settlement, Settlement Class Members are eligible to make claims for 100% (i.e., here the full 20% of billed amounts) of all covered charges they made for PIP claims under the Policy. Agreement § III ¶ I 1. They may also receive 10% interest and $9 in submission compensation for each Valid Settlement Claim submitted via U.S. Mail. *Id.* Settlement Class Members have the right to challenge the amounts of these payments and a cure procedure if their Claim Forms are deficient in some material respect. Agreement § III ¶ H 5 & ¶ K.

Settlement Class Members may claim and receive payment more readily and easily and for more benefit than if the Settlement had not been reached. There is no cap on the amount of reimbursement per Settlement Class Member or for the Settlement compensation generally, and Settlement Class Members may challenge the amount of their payments. And, critically, Defendant here has waived the PIP post-payment defenses of reasonableness, relatedness, and medical necessity for purposes of this Settlement, which otherwise would have been available under the PIP statute and potentially been a defense to payment. Agreement § III ¶ I 2; *See* § 627.736(4)(b)6, Fla. Stat.

The Settlement also calls for a claims process that is streamlined and less stringent than the demand letter requirement in the PIP statute. The Claim Form requires identification of information readily available to the Settlement Class of providers and may be delivered electronically via the Settlement Website. *See* Agreement § III ¶ H, & Ex. B thereto.   In contrast,

8

the PIP statute requires that providers make a demand that includes "an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due" and that the demand be sent only via certified mail. § 627.736(10)(b)3 & (c), Fla. Stat.

In addition, the Settlement calls for a transparent notice and administration process paid for entirely by Defendant. Agreement § III ¶ F. Defendant has also agreed to injunctive relief on a going forward basis whereby it will reimburse claims raising BA Issues according to the claims adjustment process called for in the Agreement. Agreement § III ¶ L. And subject to Court approval, Defendant will pay Class Counsel's attorney's fees and costs, which were negotiated separately from Settlement Class relief and which will in no way reduce any payments or relief to Settlement Class Members. Agreement § III ¶ M.

In exchange for the valuable relief provided in the Settlement, Settlement Class Members provide a release expressly corresponding to the BA Issue asserted in the operative complaint. Agreement § III ¶ S. The Agreement does not release all claims against all GEICO Companies; rather, the Released Claims are limited to only those claims arising from or related to the BA Issue. *Id*.

### C.  Settlement Notice and Administration, Exclusions, and Objections

The Settlement incorporates a robust notice and administration program meant to ensure Due Process. To ensure the best notice practicable, the Settlement calls for individual Direct Mail Notice to be sent directly to Settlement Class Members via First-Class Mail, postage prepaid, 30 days after entry of the Preliminary Approval Order (the Notice Deadline). Agreement § III ¶ G 1. It also requires an interactive Settlement Website dedicated to the Settlement to be established by the Notice Deadline and which will contain pertinent documents, the Direct Mail Notice, a toll-

free number where Settlement Class Members can obtain details regarding the Settlement and the Claim Form, and a portal where Claim Forms can be submitted. *Id*. at ¶ G 2.

And Settlement Class Members will have an opportunity to exclude themselves from the Settlement or object to its approval. Agreement § III ¶¶ O & P. The deadlines for filing Opt Out Requests and objections are conspicuously listed in the Direct Mail Notice, which will also be on the Settlement Website. Agreement § II ¶ A 39, § III ¶ G 2, & Ex. A thereto. The Direct Mail Notice informs Settlement Class Members that the Final Approval Hearing will be the only opportunity for them to appear and have their objections heard. Agreement, Ex. A. The Direct Mail Notice also informs Class Members who do not opt out of the Settlement that they will be bound by the release. *Id*.

Finally, the Direct Mail Notice (which will also appear on the Settlement Website) will provide information: (i) regarding the material terms of the Settlement; (ii) the proposed awards of attorneys' fees and costs;[4] and (iii) how Class Members can obtain additional information. *Id*.

## IV.   ARGUMENT

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of claims brought on a class basis. This process entails certifying the proposed settlement class and finding preliminarily that the proposed settlement is sufficiently fair, reasonable, and adequate that it falls within the range of possible approval, and it is in the best interests of the settlement class that they be given the opportunity to be heard regarding the settlement and the opportunity to exclude themselves from the proposed settlement class.

---

[4] As stated in the Direct Mail Notice, Defendant has agreed to pay reasonable attorneys' fees and costs as awarded by the Court not to exceed $4,950,000.00. Agreement § III ¶ M & Ex. A thereto. Defendant will pay the attorneys' fees and expenses approved by the Court separately from the relief to the Settlement Class, and these payments will not reduce any relief to the Settlement Class. *Id*.

*Fruitstone v. Spartan Race Inc*., No.1:20-CV-20836, 2021 WL 354189 (S.D. Fla. Feb. 2, 2021). Considering the strong policy favoring settlement of class actions—combined with the fact that this Court (ECF No. 200) and Judge Bloom in *Gerber*, 321 F.R.D. 688, already certified contested classes on the BA Issue and a PIP class settlement was recently approved in *Haskin*—this Court should easily find that the Settlement Class the Parties propose should be preliminary approved.

## A.   Certification of the proposed settlement class is appropriate.

For purposes of this Settlement only, Defendant does not oppose class certification. Like other class settlements, to achieve a global settlement, the Settlement provides for an expanded Settlement Class and adds defendants through an amended complaint. *See* Agreement § III ¶¶ D, E; *Haskin*, No. 17-62462-CIV (ECF No. 59); *see also Poertner v. Gillette Co*., 618 Fed. Appx. 624, 625 (11th Cir. 2015) (finding no abuse in discretion in approving settlement involving amended complaint that expands scope of class and affords "global peace"); ECF No. 200 at 16 (finding the Court may modify class certification "in light of subsequent developments in the litigation"); *Barron v. Snyder's-Lance, Inc.*, No. 0:13-CV-62496, 2016 WL 3913571, at *1 (S.D. Fla. Feb. 12, 2016) (preliminarily approving settlement including leave to file amended complaint); Fed. R. Civ. P. 23(c)(1)(C). To achieve this, the Parties request the Court to vacate its prior certification order, because without vacatur, the Settlement would not be possible. *See Zurich Am. Ins. Co. v. S.-Owners Ins. Co*., No. 3:15-CV-1041-J-34PDB, 2019 WL 10854446, at *2 (M.D. Fla. Aug. 6, 2019); Agreement § III ¶¶ B, C (stating necessity of vacatur for settlement); *see also* ECF No. 200 at 16; Fed. R. Civ. P. 23(c)(1)(C).

In exercising its discretion whether to certify a settlement class, a court must consider all Federal Rule of Civil Procedure 23(a) factors and find at least one subsection of Rule 23(b) is satisfied—"except that the Court need not consider the manageability of a potential trial, since the settlement, if approved, would obviate the need for a trial." *Gottlieb v. CITGO Petroleum Corp.*,

No. 9:16-CV-81911, 2017 WL 6949273, at *2 (S.D. Fla. Aug. 14, 2017) (citing among others, *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997)); *see also Haskin*, Ex. A hereto at ¶ 7.

The four requirements of Rule 23(a) are: "(1) the class must be so numerous that joinder of all members is impracticable ('numerosity'); (2) questions of law or fact common to the class must exist ('commonality'); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class ('typicality'); and (4) the representative parties must fairly and adequately protect the interests of the class ('adequacy of representation')." *Leszczynski v. Allianz Ins*., 176 F.R.D. 659, 668 (S.D. Fla. 1997). In addition, the court must find that the case can proceed as a class action under the express requirements in subparts (1), (2), and/or (3) of Rule 23(b) and/or Rule 23(c)(4). *Sharf v. Fin. Asset Resolution, LLC,* 295 F.R.D. 664, 668–69 (S.D. Fla. 2014); *Williams v. Mohawk Indus., Inc*., 568 F.3d 1350, 1359-60 (11th Cir. 2009). The Settlement calls for certification of a Rule 23(b)(3) Settlement class. Agreement § III ¶ A 1.   Rule 23(b)(3) certification requires a showing of: (1) "predominance" (that "questions of law or fact common to class members predominate over any questions affecting only individual members"); and (2) "superiority" ("that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy"). *Collins v. Erin Capital Mgmt., LLC*, 290 F.R.D. 689, 699 (S.D. Fla. 2013)

For purposes of the Settlement, all class certification elements are satisfied here:

1. **Rule 23(a) numerosity is satisfied.** Numerosity is generally a "low hurdle." *Belin v. Health Ins. Innovations, Inc*., No. 19-CV-61430, 2021 WL 358102, at *9 (S.D. Fla. Feb. 1, 2021). As the Court previously found, a subset of the Settlement Class included 6,045 members who met the numerosity requirement and could be ascertained using Defendant's business records. *See* ECF No. 200 at 7-10. The larger Settlement Class is over that amount, making it likewise so numerous

that joinder would be impractical. *See Aranaz v. Catalyst Pharm. Partners Inc.*, 302 F.R.D. 657, 664 (S.D. Fla. 2014). Accordingly, numerosity is easily satisfied.

**2.      Rule 23(a) Commonality and Rule 23(b)(3) Predominance/Superiority are satisfied.** "The threshold for commonality…is not high." *Gottlieb,* 2017 WL 6949273, at *2. Commonality only requires one issue common to all members of the class. *Mohawk*, 568 F.3d at 1355. As Judge Bloom found on the same BA Issue resolved in the Settlement, commonality is satisfied in cases of form contracts such as the Policy, whose text is materially similar, and resolving the meaning of the Policy will answer a central common question in the case. *See Gerber,* 321 F.R.D. 688, 698. And as the Court found previously (ECF No. 200 at 11), commonality is easily satisfied here: By definition, each Settlement Class Member made a claim under the same Policy, the billed amount of the claim was less than the PIP Statute schedule of maximum charges, and Defendant(s) paid the claim at 80% of the charge using the BA reason code. The legal issue for every Settlement Class Member is the same—whether the Policy's BA language required Defendant(s) to pay 100% of the billed amount (i.e., 20% more in coverage) or just the 80% Defendant(s) paid.

Like commonality, Rule 23(b)(3) predominance only requires one predominant common question. *Sanchez-Knutson v. Ford Motor C*o., 310 F.R.D. 529, 537 (S.D. Fla. 2015). Predominance analysis focuses on "whether there are common liability issues which may be resolved efficiently on a class-wide basis" that have "direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Collins*, 290 F.R.D. at 699; *Brown v. SCI Funeral Servs. of Fla.*, 212 F.R.D. 602, 606 (S.D. Fla. 2003). Here, as this Court previously found (ECF No. 200 at 14-15), Rule 23(b)(3) predominance was met. The single legal issue for the Settlement Class (as it was for the contested class) is whether Defendant's uniform policy of paying 80%

(rather than 100%) of billed amounts when they are less than PIP schedule of maximum charges breaches the form Policy. Also, Settlement Class Members have allegedly suffered the same injury as the contested class—failure to pay 20% in coverage—which is provable class-wide based on GEICO records, which must be used for the Claims process. ECF No. 144 at 18-19.  Critically, too, in the Settlement, Defendant(s) waive the defenses of reasonableness, relatedness, and medical necessity, which have historically been used to avoid predominance. ECF No. 144 at 19; Agreement § III ¶ I 2.

"[T]he conclusion that common issues of law and fact predominate…[in turn] strongly militates in favor of a class action as a superior means of litigating [a] case." *Cnty. of Monroe, Fla. v. Priceline.com, Inc*., 265 F.R.D. 659, 671-72 (S.D. Fla. 2010); *see Williams*, 568 F.3d 1350. The Rule 23(b)(3) "superiority" requirement comes down to whether the class treatment would be advantageous, makes sense, and is manageable. *See Dickens v. GC Services Ltd. P'ship*, 706 Fed. Appx. 529, 537 (11th Cir. 2017); *Manno v. Healthcare Revenue Recovery Group, LLC*, 289 F.R.D. 674, 690 (S.D. Fla. 2013); *Moore v. GNC, Holdings, Inc*., No. 12-61703CIV, 2013 WL 12237784, at *7 (S.D. Fla. Oct. 17, 2013); *Fabricant v. Sears Roebuck & Co*., 202 F.R.D. 310, 318 (S.D. Fla. 2001).

Class treatment is clearly the superior way to handle this case. Notifying Class Members has already been shown to be feasible and manageable, and the Settlement calls for a robust Notice Program paid for by Defendants. *See Gerber*, No. 16-cv-62610-BB (ECF No. 158). Moreover, as stated above, the BA Issue has been litigated for at least five years and led to "voluminous lawsuits." As this Court noted in finding superiority satisfied, "[t]he alternatives to class certification—piecemeal state court proceedings or individual negotiations with GEICO—are less efficient than resolving all claims collectively in one action." ECF No. 200 at 15-16.   It just makes good sense that the BA Issue should be finally resolved in one forum.

**3. Rule 23(a) Typicality/Adequacy of Representation are satisfied.** "Typicality does not require that the claims of the class representative be identical to those of the class at large, but only that they arise from the same event, pattern or practice and be based on the same legal theory." *Aranaz*, 302 F.R.D. at 665 (citation omitted). "[T]ypicality differs from commonality in that it focuses on the named class representative's individual characteristics in comparison to the proposed class." *Sanchez-Knutson*, 310 F.R.D. at 539. Typicality is shown where the class representative's claim arises from the same event or practice and legal claim as other class members. *See South v. Progressive Select Ins. Co.*, No. 19-21760-CIV, 2020 WL 8641572, at *4 (S.D. Fla. Dec. 28, 2020).

As the Court previously found (ECF No. 200 at 13), Plaintiff, like each Settlement Class Member, has been subject to the same practice: Plaintiff, like each Settlement Class Member, submitted charges to Defendant(s) that were less than the schedule of maximum charges, Defendant(s) covered the charges under the Policy, containing nearly identical language, and paid Plaintiff only 80% of the charges billed, indicating the reason code "BA." ECF No. 144 at 7-9. Plaintiff therefore shares an injury and legal claim with other Settlement Class Members for breach of contract satisfying typicality. *See Ruderman ex rel. Schwartz v. Washington Nat. Ins. Co.*, 263 F.R.D. 670, 681 (S.D. Fla. 2010); *Brink v. Raymond James & Associates, Inc.*, 328 F.R.D. 437, 446 (S.D. Fla. 2018).

"Adequacy of representation is tied to both commonality and typicality." *Sanchez-Knutson*, 310 F.R.D. at 540.   Rule 23(a)(4) requires a showing that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).   It "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *CMart, Inc. v. Metro. Life Ins. Co.*, 299 F.R.D. 679, 690 (S.D. Fla. 2014).

No actual or potential conflicts exist between Plaintiff and Settlement Class Members in this case. As stated above, Plaintiff has been challenging and is resolving the same claim interpreting the same Policy for the benefit of all Class Members and has been an active participant in the case. *See* ECF No. 144-4 at ¶¶ 12-19. Also, Class Counsel are well versed in complex class and insurance litigation and have been extensively investigating and litigating BA Issue individual and class cases (like this one and *Gerber*) for years. *See* ECF No.144-8 at ¶¶ 1-17. Plaintiff and its counsel are thus adequate for Rule 23(a)(4) and Rule 23(g)(4) purposes.

## B. Preliminary approval of the Settlement is appropriate.

The settlement of complex class action litigation is favored by public policy and strongly encouraged. *See Behrens v. Wometco Enters., Inc*., 118 F.R.D. 534, 538 (S.D. Fla. 1988), aff'd, 899 F.2d 21 (11th Cir. 1990); *see also Ass'n for Disabled Ams., Inc. v. Amoco Oil Co*., 211 F.R.D. 457, 466 (S.D. Fla. 2002) (citation omitted). "Determining the fairness of the settlement is left to the sound discretion of the trial court...." *Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984). The Court's exercise of discretion in this regard should be "informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Perez v. Asurion Corp*., 501 F. Supp. 2d 1360, 1379 (S.D. Fla. 2007). In this vein, a court "should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might [be] gained.'" *Amoco Oil Co*., 211 F.R.D. at 467.

Approval of a class action settlement is a two-step process. Preliminary approval and a subsequent fairness hearing. At preliminary approval, the court determines whether the proposed settlement is "'within the range of possible approval'"—whether there is "'probable cause'" to give notice of the proposed settlement to class members, and the Court will "likely be able to" grant final approval. *Shaw v. Set Enterprises, Inc.,* No. 15-62152-CIV, 2017 WL 2954675, at *1 (S.D.

Fla. June 30, 2017); Fed. R. Civ. P. 23(e)(1); *In re Checking Account Overdraft Litigation*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) (Preliminary approval examines the parties' good faith negotiations, any "obvious deficiencies" and whether the settlement falls within "the range of reason.").   Then, after notice is provided to class members, the court conducts a fairness hearing at which all interested persons may be heard and then makes a final determination on approval— whether the Settlement is "fair, adequate and reasonable." *See Smith v. Wm. Wrigley Jr. Co*., No. 09-60646, 2010 WL 2401149, at *6 (S.D. Fla. June 15, 2010); Fed. R. Civ. P. 23(e)(2); *see generally* 4 Newberg on Class Actions §§ 13:14-13:15 (5th ed.).

Several factors show, procedurally and substantively, the Settlement falls within the range of reasonableness to justify notice of it to the proposed Settlement Class:

1.      **Recovery under the circumstances is significant and fair.** The Settlement meets the critical test in gauging its fairness and reasonableness: As detailed above, seen in total, the Settlement provides concrete monetary and non-monetary relief that directly addresses the claimed harm. *See Lipuma v. Am. Express Co*., 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005). The Settlement treats Settlement Class Members equitably to one another by providing them with an equal opportunity to obtain relief with no cap of their potential benefits if validly claimed. Indeed, the Settlement relief is commensurate with what a Settlement Class Member might recover on an individual basis under the PIP Statute and compensates members for 100% of the harm alleged plus interest and submission of a Valid Settlement Claim via US Mail. Moreover, the proposed Settlement administration and Claim Form process is uniform and streamline and easier to effectuate than that demanding payment under the PIP statute supporting its fairness. *See Poertner*, 618 Fed. Appx. 624, 628 (11th Cir. 2015) cert. denied 136 S. Ct. 1453 (2016) (approving claims-made settlement noting relief exceeded what class member may receive at trial); *see also Saccoccio v. JP Morgan Chase Bank, N.A*., 297 F.R.D. 683, 696 (S.D. Fla. 2014) ("Numerous Courts in this

district have required claims forms to be submitted by class members."); *Ferron v. Kraft Heinz Foods Co.*, No. 20-CV-62136-RAR, 2021 WL 2940240, at *4 (S.D. Fla. July 13, 2021) (approving settlement providing relief based on submitting a "valid Claim Form").

The Settlement also benefits Class Members by providing immediate relief in lieu of several more months or years of protracted litigation and appeals that have been transpiring since at least 2016. *See Lipuma* at 1322; *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1345 (S.D. Fla. 2011). And no Settlement administration costs or attorney's fees or costs will be deducted from any relief provided to Settlement Class Members. Agreement § III ¶¶ F, M.[5]

**2.      The Settlement is the product of serious, informed, non-collusive negotiations, litigation, and adequate representation.** Furthermore, as set forth above, the proposed Settlement resulted from intensive, arm's-length negotiations among very experienced attorneys with the initial assistance of an experienced mediator. *See Wilson v. EverBank*, 14-CIV-22264, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016) (fact that mediator involved showed arm's length negotiation process). The negotiations have produced a result that Plaintiff and its counsel believe to be in the best interests of the proposed Settlement Class, taking into account the costs and risks of continued litigation. *See Shaw*, 2017 WL 2954675, at *1 ("courts should [also] give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks.").

GEICO Defendants' counsel are experienced in complex and class litigation and handled the *Haskin* settlement approved by Chief Judge Altonaga, which, was a PIP class settlement. Class

---

[5] If the Court preliminarily approves the Settlement, Class Counsel will separately move the Court to approve the attorney's fee award as stated in the Settlement Agreement and will provide argument and evidentiary support for the amount requested. *See* Agreement § III ¶ M. Counsel's fee application will be available for review on the Settlement Website. *Id.* ¶ G 2.

Counsel in turn have been litigating the BA Issue since at least 2016 when *Gerber* (presided over by Judge Bloom) commenced. In this case, the Parties negotiated Settlement terms only after extensive and contentious investigation and litigation of the facts and law, numerous meetings and conferences between representatives of the parties, review of tens of thousands of documents and millions of lines of data, corporate depositions, and interviews of and consultations with experts. These efforts provided Plaintiff and their experienced counsel with more than sufficient information to analyze thoroughly the strengths and weaknesses of the BA Issue, and subsequently negotiate and consummate a fair and adequate settlement to propose to the Court.

The relief terms themselves stated above show the negotiations were at arm's length and the Settlement Class is adequately represented. *See Gayle v. Meade*, No. 20-21553-CIV, 2021 WL 6101368, at *11 (S.D. Fla. Dec. 3, 2021); *Montoya v. PNC Bank, N.A.*, No. 1420474CIVGOODMAN, 2016 WL 1529902, at *9 (S.D. Fla. Apr. 13, 2016). Relief is complete. And the Settlement does not improperly grant preferential treatment to segments of the Settlement Class or the Class Representative.[6] All Settlement Class Members are entitled to the same relief.

---

[6] Moreover, the Settlement discloses all agreements relating to the Settlement. *See* Agreement § I ¶¶ A 6-7, § III ¶ U; *see also* Fed. Rule. Civ. P. 23(e)(3). Under the Settlement, Plaintiff will receive a separate payment in the *Rosenberg-Lang* case; the *Rosenberg-Lang* payment does not however constitute inequitable treatment. That case is a state, separate individual (non-class) statutory bad-faith action that sought punitive damages and is expressly not part of the Settlement Class because it's a separate currently pending individual lawsuit involving the BA Issue. *See* Agreement § I ¶ A 7. The Settlement also calls for a payment to settle the *Gerber-Carruthers* case that is likewise a separately pending state case involving the BA Issue with the potential for statutory bad faith. § I ¶ A 6, § III ¶ U. Importantly, *Gerber-Carruthers* does not involve Plaintiff here as a named plaintiff or putative class representative, and the payment is not going to Plaintiff or Class Counsel. *See* Agreement § III ¶ U. *Gerber-Carruthers* is *not* currently certified as a class action but is subject to an individual confession of judgment for the named plaintiff Gerber only. *Id.* So, it too does not constitute inequitable treatment under the Settlement. Additionally, to ensure equitable treatment and to protect the Court's rulings, the Settlement and proposed Preliminary Approval Order provide that no new BA Issue cases may be commenced pending final approval. Agreement § III ¶ E & Ex C thereto at ¶¶ 26-27; *see Ruderman by & through Schwartz v. Washington Nat'l Ins. Co.*, No. 08-CV-23401-CIV, 2010 WL 11505859, at *6 (S.D. Fla. Aug. 27, 2010); *Fruitstone*, No. 1:20-CV-20836, 2021 WL 354189, at *9.

And any attorney's fee negotiations took place only after relief had been agreed for the Settlement Class. Agreement ¶ III M.

   **3.   The Settlement complies with Due Process requirements.** Finally, the multiple avenues of notice to the Class of the Settlement clearly satisfy Rule 23 and Due Process. *See Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1261 (S.D. Fla. 2016).   Rule 23(c)(2)(B) provides that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also* Fed. R. Civ. P. 23(e)(1) & (h)(1); *Morgan, id.* Multi-tiered notice programs including direct mail and electronic means satisfy these standards. *Id.* at 1262; *see also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 662-63 (S.D. Fla. 2011); *Janicijevic v. Classica Cruise Operator, Ltd.*, No. 20-CV-23223, 2021 WL 2012366, at *2 (S.D. Fla. May 20, 2021) (finding Due Process met through First Class Mail and website notice).

   The proposed manner and forms of notice satisfy Rule 23(c)(2)(B) and Due Process. The Settlement calls for Direct Mail Notice postage prepaid via First Class Mail which is the quintessential form of notice courts find satisfies Due Process. In addition, the Settlement Website dedicated to the Settlement, conspicuously referred to in the Direct Mail Notice, will contain relevant documents, information, a toll-free number, and a portal for uploading claims documents. *See* Agreement, Ex. A thereto.   The Direct Mail Notice defines the Settlement Class; describes the allegations of the operative complaint; informs Settlement Class Members of their right to opt-out and object, the procedures for doing so, and the time and place of the Final Approval Hearing; informs Settlement Class Members of their rights to enter an appearance through their own counsel, if they desire; notifies them that a judgment would bind them unless they opt out; and

tells them how and where they can obtain more information including a toll-free number and the Settlement Website, which will contain, inter alia, a full copy of the Settlement Agreement. *See* Fed. R. Civ. P. 23(c)(2)(B); *see also Perez*, 501 F. Supp. 2d at 1377; *Ruderman ex rel. Schwartz v. Washington Nat. Ins. Co.*, No. 08-CV-23401-CIV, 2010 WL 11505574, at *4 (S.D. Fla. Nov. 12, 2010).

## V.   CONCLUSION

WHEREFORE, Plaintiff respectfully request that the Court grant the Settlement preliminary approval and certify the proposed Class for purposes of settlement, direct notice be distributed to Settlement Class Members, and such further relief as the Court deems proper.

## <u>CERTIFICATE OF GOOD FAITH CONFERENCE</u>

Pursuant to Local Rule 7.1(a)(3)(A), the undersigned certifies that counsel for Plaintiff has conferred with counsel for the GEICO Companies regarding the relief requested above, which is the relief requested in the Parties' Joint Motion for Preliminary Approval of Class Settlement, and the undersigned can certify that the relief requested supported by this memorandum is unopposed.

Respectfully submitted,

**ZEBERSKY PAYNE SHAW LEWENZ, LLP**

**Edward H. Zebersky**
Edward H. Zebersky, Esq. (FBN: 908370)
Michael T. Lewenz, Esq. (FBN: 111604)
Mark S. Fistos, Esq. (FBN: 909191)
110 Southeast 6th Street, Suite 2900
Fort Lauderdale, FL 33301
Telephone: (954) 989-6333
Facsimile: (954) 989-7781
ezebersky@zpllp.com
mlewenz@zpllp.com
mfistos@zpllp.com

**HILGERS GRABEN PLLC**
Alec Schultz, Esq. (FBN: 35022)
1221 Brickell Avenue, Suite 900
Miami, Florida 33131
Telephone: (305) 630-8304
aschultz@hilgersgraben.com
***Counsel for Plaintiff***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 1, 2022, I electronically filed the foregoing document

with the Clerk of the Court using CM/ECF.   I also certify that the foregoing document is being

served this day on all counsel of record identified in the below Service List in the manner specified,

either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other

authorized manner for those counsel or parties who are not authorized to electronically receive

Notices of Electronic Filing.

**Edward H. Zebersky**
Edward H. Zebersky

<u>**SERVICE LIST**</u>

*Rosenberg, etc. v. GEICO, USDC Case No. 0:19-cv-61422-CANNON/Hunt*

<u>**Counsel for Defendant**</u>

Peter D. Weinstein, Esq.
Michael A. Rosenberg, Esq.
**COLE, SCOTT & KISSANE, P.A.**
600 North Pine Island Road
Lakeside Office Center, Suite 500
Plantation, Florida 33324
Telephone:   954-473-1112
Peter.Weinstein@csklegal.com
Michael.Rosenberg@csklegal.com
Karen.Henley@csklegal.com
Romona.Gorwitz@csklegal.com


and

John P. Marino (FBN: 814539)
Kristen L. Wenger (FBN: 92136)
Mark Drew Krieger, IV (FBN: 117800)
**SMITH, GAMBRELL & RUSSELL, LLP**
50 North Laura Street, Suite 2600
Jacksonville, Florida 32202
Phone: (904) 598-6100
Facsimile: (904) 598-6204
jmarino@sgrlaw.com
kwenger@sgrlaw.com
dkrieger@sgrlaw.com