IN THE UNITED STATES DISTRICT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 19-cv-61422-CANNON/Hunt

RANDY ROSENBERG, D.C., P.A.
a/a/o Danielle Russell; and on behalf of
itself and all others similarly situated,

                                                         CLASS REPRESENTATION

    Plaintiff,

v.

GEICO GENERAL INSURANCE COMPANY,
GEICO INDEMNITY COMPANY,
GOVERNMENT EMPLOYEES INSURANCE COMPANY,
GEICO CASUALTY COMPANY,

    Defendant.
_____/

**JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, Randy Rosenberg, D.C., P.A. ("Plaintiff"), individually and on behalf of the proposed Settlement Class, and Defendants, GEICO General Insurance Company, GEICO Indemnity Company, Government Employees Insurance Company, and GEICO Casualty Company (the "GEICO Companies")[1] (collectively with Plaintiff, the "Parties"), respectfully move the Court for final approval of the final Settlement Agreement and Release ("Settlement" or "Agreement"), filed with the Court on March 1, 2022 (ECF No. 217-1), and preliminarily approved by the Court by Order dated May 31, 2022 (ECF No. 222), and for the entry of a Final Approval Order. In support, they state as follows:

---

[1] Pursuant to the Settlement and the Court's Preliminary Approval Order (ECF No. 222), Plaintiff filed its Second Amended Complaint naming as Defendants "The GEICO Companies" GEICO General Insurance Company, GEICO Indemnity Company, Government Employees Insurance Company, and GEICO Casualty Company.

# I. BACKGROUND

## A. The Alleged Underlying Dispute

This Action involved an alleged disagreement over interpretation of the GEICO PIP[2] insurance Policy Endorsement issued in Florida. Although this case was filed in 2019, the underlying interpretive dispute is identified as the "BA Issue" in the Agreement and has been hard fought since at least 2016. *See* ECF No. 218 at 3-5, No. 226-1 at ¶¶ 19-31, No. 217-1 at 3-4.

Specifically, the alleged "BA Issue" finally and forever resolved in this Settlement refers to allegations regarding (1) the GEICO PIP Policy endorsement language stating in relevant part, "A Charge submitted by a provider, for an amount less than the amount allowed above, shall be paid in the amount of the charge submitted;" and (2) how insurance claims should be calculated and paid when this language applies. *See* ECF No. 217-1 ("Agreement") § II ¶ A 3; ECF No. 227 at ¶¶ 17-18. The Parties have agreed and understand their Settlement constitutes no admission by either Party regarding the allegations surrounding the BA Issue or any other wrongdoing or position. Agreement § I ¶ G.

## B. Litigating the Action

Plaintiff filed this Action on the alleged BA Issue seeking declaratory relief against GEICO General in state court on May 7, 2019. ECF No. 1-2. GEICO General removed the Action to this Court on June 6, 2019. ECF No.1. Plaintiff twice moved to remand the case (ECF Nos. 7, 156), which the Court in each instance denied. ECF Nos. 19, 161. Plaintiff filed its First Amended Complaint on September 11, 2019, adding a count for breach of contract. ECF No. 26. Pursuant to the Court's Preliminary Approval Order (ECF No. 222 at 5), on June 22, 2022, Plaintiff filed its

---

[2] Unless otherwise defined in this Motion, all capitalized terms in this memorandum have the meanings set forth in the Agreement.

Second Amended Complaint adding the other GEICO Companies named in the Settlement. ECF No. 227.

The Parties litigated the Action contentiously and thoroughly. Each Party tested the other's legal theories, claims, defenses, and evidence extensively. *See* ECF No. 218 at 3-5, No. 226-1 at ¶¶ 19-31, No. 217-1 at 3-4 (discussing history and extensive motion and pretrial litigation up to trial). The extensiveness and complexities of the discovery materials produced in turn necessitated that each side consult experts to analyze and provide reports that were used in the Action. ECF No. 218 at 4-5 (discussing discovery). Each Party's exploration of its position in turn led to a thorough review of the strengths and weaknesses of each one's position prior to reaching a compromise of the Action. *Id.*

### C. The Settlement Negotiations

Against this backdrop, settlement negotiations took place off and on formally and informally beginning early in the case. *See* ECF Nos. 55-56. The Parties were initially aided by a neutral mediator and eventually resolved the Action through experienced counsel. They attended mediation with nationally renowned and experienced mediator Rodney Max on January 8, 2020, which, because of the Pandemic, was attended telephonically by each Party's representatives and counsel. ECF Nos. 58-60, & 148-2 at 144:2-5. No settlement was reached. The Parties held another mediation with Mr. Max on January 30, 2020. Again, no compromise was reached. The Parties continued to communicate through Mr. Max through March 2021, at which time an impasse was declared. ECF No. 131.

Thereafter, the Parties held firmly to their positions through the hard-fought motion practice and discovery discussed in detail in preliminary approval submissions. *See* ECF No. 218 at 4-5. But interest in settlement continued. GEICO General added additional counsel who assisted

in pursuing a potential global settlement on the BA Issue. *See* ECF No. 213 at ¶ 5. Settlement talks resumed. But reaching and effectuating a well-crafted settlement proved difficult. Additional counsel had to get up to speed on ongoing settlement negotiations, the complexities of the issues and parties involved, and the extensive materials required for submission in connection with a proposed global class settlement for *all* GEICO entities—all tailored to the legal claims raised in this case and related BA Issue cases that were pending in state and federal courts. *Id*. at ¶¶ 4, 7-8.

After the foregoing extensive work by the Parties, including countless oral and written negotiations and exchanges of several draft agreements, proposed orders, proposed claim forms, and proposed class notices, on February 28, 2022, the Parties executed the Agreement and finalized the exhibits, then filed them with their joint motion for preliminary approval on March 1, 2022. ECF No. 217.

### D. Preliminary Approval

The Court preliminarily approved the Settlement on May 31, 2022. ECF No. 222. The Court found that the Settlement was sufficiently fair and reasonable to warrant notice to the Settlement Class and setting a Final Approval Hearing. *Id*. at 1, 5. Rather than vacating its prior class certification order, the Court amended the class definition it previously certified to reflect the Settlement Class requested by the Parties and certified the Settlement Class for settlement purposes only. *Id*. at 2, 6. The Court also approved appointment of the Parties' choice of Claims Administrator, ordered the Notice Program be implemented, approved the Settlement Claim Form,

prescribed the objector and Opt-Out requirements, and set dates for the Final Approval Hearing[3] and submissions[4] and Class Counsel's application for attorney's fees.[5] *Id*. at 8-18, 20.

### E. Administrator

After the Court entered the Preliminary Approval Order, JND Legal Administration ("JND"), a nationally recognized class action settlement administrator, was retained to administer the Settlement and Notice Program as directed in the Preliminary Approval Order. *See* ECF No. 222 at 8.

To support this Joint Motion, the Parties submit an Initial Affidavit of Mailing from JND ("JND Int. Aff.") that provides the initial information on the Notice Program and responses from Settlement Class Members, as the claims period and other administrative issues remain open. *See* **Exhibit A** hereto. The Parties will file JND's Supplemental Affidavit of Mailing with additional information regarding the Settlement on or before November 18, 2022, which is the Court's deadline for the claims administrator submissions. *See* ECF No. 222 at 15 (setting 14-day deadline for administrator mailing submissions); *see also* JND Int. Aff. ¶ 4.

### F. CAFA Notice

On March 11, 2022, JND compiled and timely sent the required Class Action Fairness Act ("CAFA") notification materials required by 28 U.S.C. § 1715 via Federal Express to the U.S. Attorney General, and applicable state Attorneys General and Insurance Commissioners. JND Int. Aff. ¶ 5.

---

[3] The date for the Final Approval Hearing was later changed from November 4, 2022, to December 2, 2022. ECF No.225.
[4] The date for Final Approval submissions was later changed from October 7, 2022, to October 31, 2022. ECF No. 235.
[5] Class Counsels' request for attorney's fees and supporting material were timely filed separately pursuant to the Court's Preliminary Approval Order. *See* ECF No. 226.

### G. Notice Program

JND implemented the Notice Program under the Settlement as ordered by the Court. JND mailed 28,818 Notices of Proposed Class Action Settlement and Final Approval Hearing including the Claim Form and Release ("Notice Package") in the form approved by the Court to potential Settlement Class Members. JND Int. Aff. ¶¶ 6-7 . A copy of the Notice Package that was sent to potential Settlement Class Members will be attached as an Exhibit to the Supplemental Affidavit of Mailing. *Id*. at ¶ 7. A copy of the Class Notice Mailing List, including names and Tax Identification Numbers, will also be attached to the Supplemental Affidavit of Mailing.

JND further established a Settlement website, www.FLBilledAmountSettlement.com ("Settlement Website"), where Settlement Class Members go to review pertinent documents relating to the Settlement and submit claims electronically. The home page contains a summary of the Class Notice. It also provides links to a Key Dates summary, Frequently Asked Questions, Important Documents (including the Preliminary Approval Order, Settlement Agreement and Release with exhibits, and Class Counsel's motion for attorney's fees), the electronic Claim Form submission page, and the contact email, toll-free number, and address for contacting JND. The Settlement Website will remain in service, and has been updated as necessary, through the end of settlement administration, which is on-going.

JND also established a post office box to receive correspondence from Settlement Class Members concerning the proposed Settlement, including Opt-Out exclusion requests.[6] JND will continue to receive Settlement Class Member correspondence and respond as appropriate through final administration of the Settlement. And JND established and maintained a toll-free telephone system containing recorded answers to frequently asked questions and options to speak to

---

[6] *See* bottom of the home page for www.FLBilledAmountSettlement.com.

[2337233/5]                                         6

representatives directly. This telephone number was provided to Settlement Class Members in the Class Notice and is identified on the Settlement Website.[7] The deadline to submit claim forms is November 28, 2022.

### H. Opt-Out Requests

After accounting for duplicate submissions, JND received Opt-Out Requests from 564 Settlement Class Members having unique tax identification numbers that were deemed valid, timely, and meeting the requirements set forth in the Settlement Agreement and approved by the Court in the Preliminary Approval Order. *See* ECF No. 222 at 13-15.  The list of the timely and valid Opt-Out Requests will be attached as an Exhibit to the Supplemental Affidavit of Mailing. *See* JND Int. Aff. ¶ 9.

### I. Objections and Notices of Intent to Appear at Final Approval Hearing

JND did not receive any Objections to the Settlement (including Plaintiff's Motion for Attorney's Fees) by the August 15, 2022 deadline or thereafter, and has to date not received any Notices of Intent to Appear at the Final Approval Hearing. JND. Int. Aff. ¶ 11.  The deadline for these notices is November 2, 2022.

### J. Final Approval Order

The Parties attach as **Exhibit B** to this Motion a proposed Final Approval Order that is substantially the same form attached to the Agreement filed with their Motion for Preliminary Approval. *See* ECF No. 217-1 at 88. The appendices for the Final Approval Order will be provided on or before November 18, 2022, along with the other claims administrator submissions.

The order calls for final certification of the Settlement Class, a finding that the Settlement is fair, adequate, and reasonable, granting Plaintiff's Motion for Attorney's Fees and Costs (ECF

---

[7] *Id.*

No.226), and a finding that implementation of the Notice Program constituted the best practicable notice to Settlement Class Members under the circumstances of this Action.

The proposed Final Approval Order also calls for a form response (attached as **Exhibit C** hereto) advising the Settlement Class Member of this permanent injunction and the Released Claims described in the Final Approval Order and to be attached thereto as an Appendix.  The Preliminary Approval Order states that if the proposed settlement is approved, any Settlement Class Member who is not deemed by the Court as having submitted a valid Opt-Out Request complying with the Preliminary Approval Order requirements and the Class Notice shall be bound by the Settlement Agreement and all subsequent proceedings, orders and judgments in this Action. *See* ECF No. 222 at 15.  The proposed Final Order and Judgment therefore establishes that the GEICO Companies shall send a letter substantially in the form of the letter attached as **Exhibit C** to any Settlement Class Member (not recognized as an opt out from the Settlement Class) a letter advising the Settlement Class Member that they are barred from making a demand, filing or prosecuting a lawsuit or other proceeding, or otherwise pursuing claims released by the Settlement in the event the Settlement Class Members serves upon the GEICO Companies a notice of intent to initiate litigation under Chapter 627 of the Florida Statutes or a civil remedy notice under Chapter 624 of the Florida Statutes involving a Released Claim.

## II. MEMORADUM OF LAW

### A. Class Certification

The Parties request that the Court finally certify the Settlement Class for settlement purposes only under Federal Rule of Civil Procedure 23.  No changes have occurred since the Court's prior certification ruling that would warrant departing from the Court's prior findings that the Settlement Class meets all of elements of Rules 23(a) and 23(b)(3) for settlement purposes.

### B. The Parties Provided the Best Notice Practicable under the Circumstances.

Before a court can exercise jurisdiction over the claims of absent class members, certain minimal due process requirements must be satisfied. *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1378 (S.D. Fla. 2007). Federal Rule of Civil Procedure 23(c)(2) requires that notice to Settlement Class Members be the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." However, "even in Rule 23(b)(3) class actions, due process does not require that class members actually receive notice." *Juris v. Inamed Corp.*, 685 F. 3d 1294, 1321 (11th Cir. 2012). Instead, notice need only be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950*); see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011).

Here, the Notice Program including the multiple avenues of notice and content of the Class Notice satisfied Rule 23 and due process requirements. *See Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1261-62 (S.D. Fla. 2016). The GEICO Companies provided JND data that it scrubbed using the NCOA database and from which it was able to identify and send, via USPS First Class Mail, Notice Packages to 28,818 potential Settlement Class Members. *See Janicijevic v. Classica Cruise Operator, Ltd.*, No. 20-CV-23223, 2021 WL 2012366, at *2-3 (S.D. Fla. May 20, 2021) (finding due process met through First Class Mail notice); *Adams v. Southern Farm Bureau Life Ins. Co.,* 493 F. 3d 1276, 1287 (11th Cir. 2007); *Braynen v. Nationstar Mortgage, LLC*, 14-CV-20726, 2015 WL 6872519, at *6 (S.D. Fla. Nov. 9, 2015).

Notice was further afforded through the Settlement Website, which included relevant important documents, online claims submission, FAQs, a schedule of important dates, summary

of the long form notice mailed in the Notice Package, a toll-free number with an opportunity to speak to live operators, and a PO Box where Settlement Class could learn more and submit claims. *See Janicijevic*, at *2-3; *Braynen,* at *6; *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 691 (S.D. Fla. 2014).

The Notice Package and the Settlement Website gave Settlement Class Members all information reasonably necessary to make decisions whether to remain in the Settlement Class and be bound by the final judgment or opt out, and whether to object to any aspect of the Settlement. *See Faught*, 668 F.3d 1233, 1239. The Class Notice defines the Settlement Class; describes the allegations of the operative complaint; informs Settlement Class Members of their right to opt-out and object, the procedures and deadlines for doing so, and the time and place of the Final Approval Hearing; informs Settlement Class Members of their rights to enter an appearance through their own counsel, if they desire; describes the attorney's fees being sought by Class Counsel including the amount; tells them how to submit a claim for Settlement Benefits and the deadline for doing so; notifies them that a final judgment would bind them unless they opt out; and tells them how and where they can obtain more information including a toll-free number and the Settlement Website, which contain, inter alia, a full copy of the Settlement Agreement with all exhibits and Class Counsels' fee motion. The best practicable notice has been provided and due process is satisfied.

**C. The Settlement is Fair, Reasonable, and Adequate.**

The law has long been settled in the Eleventh Circuit: "In determining whether to approve a proposed [class action] settlement, the cardinal rule is that the district court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties."

*Perez*, 501 F. Supp. 2d at 1379 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).[8] A court's determination of these questions should be informed by the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) (quoting *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice[.]" *Janicijevic*, 2021 WL 2012366, at *3 (citations omitted); *accord Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 538 (S.D. Fla. 1988) (internal citations omitted).

"Under Rule 23(e)(2), settlements may be approved if the Class was adequately represented and the settlement was negotiated at arm's length, and if the relief provided is adequate under the factors outlined in Rule 23(e)(2)(C)." *Ferron v. Kraft Heinz Foods Co.*, No. 20-CV-62136-RAR, 2021 WL 2940240, at *7 (S.D. Fla. July 13, 2021). These Rule 23(e)(2) factors are essentially subsumed by the six factors the Eleventh Circuit has identified (in addition to the absence of fraud or collusion) that a district court should examine when assessing whether a proposed settlement is fair, adequate, and reasonable. *Id.*, at *7-8. These factors include:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986. "In evaluating these considerations, the district court should not try the case on the merits." *Behrens*, 118 F.R.D. at 539 (citing *Cotton*, 559 F.2d at 1330). Rather, "the

---

[8] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

[2337233/5] 11

district court may rely upon the judgment of experienced counsel for the parties…[and] [a]bsent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel." *Wilson v. EverBank*, No. 14-CIV-22264, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016) (citing and quoting *Nelson* and *Cotton*) (internal quotations marks omitted). And "where the settlement previously has been preliminarily approved, the settlement is presumptively reasonable." *Terazosin Hydrochloride Antitrust Litig., In re*, No. 99MDL1317SEITZKLEIN, 2005 WL 2451960, at *5 (S.D. Fla. July 8, 2005).

The Court has already granted the Settlement preliminary approval, finding it sufficiently reasonable to warranting notifying Settlement Class Members. Nothing has changed that would alter this finding. *See Gonzalez v. TCR Sports Broad. Holding, LLP*, 1:18-CV-20048-DPG, 2019 WL 2249941, at *5 (S.D. Fla. May 24, 2019). Based on these factors, the Parties, through experienced class counsel, respectively submit that the Court should finally approve the Parties' Settlement and enter the proposed Final Approval Order.[9]

### 1. *There was no fraud or collusion, and the Settlement was negotiated as arm's length.*

"In determining whether there was fraud or collusion, the court examines whether the settlement was achieved in good faith through arms-length negotiations, whether it was the product of collusion between the parties and/or their attorneys, and whether there was any evidence of unethical behavior or want of skill or lack of zeal on the part of class counsel." *Canupp v. Sheldon*, No. 204-CV-260-FTM-99DNF, 2009 WL 4042928, at *9 (M.D. Fla. Nov. 23, 2009) (citing *Bennett*, 737 F.2d at 987 n. 9).

---

[9] This proposed order is in a format similar to other orders in this district. *See, e.g.,* ECF No. 218-2; *Cortazar v. CA Management Services Parent*, No. 19-cv-22075-UU, 2020 WL 12574800 (SD. Fla. Mar. 13, 2020); *Diaz v. HSBC USA, N.A.*, No. 1:13-CV-21104, 2014 WL 5488161 (S.D. Fla. Oct. 29, 2014).

Here, the record and the history of the alleged BA Issue demonstrate that there was no fraud or collusion regarding the Settlement and that it was negotiated at arm's length. The alleged BA Issue, resolved here globally, has been contentiously and zealously litigated since at least 2016. *See* ECF No. 218 at 3-5, No. 226-1 at ¶¶ 19-31, No. 217-1 at 3-4. The Parties reached the Settlement after 33 months of litigation and more than a year of negotiations, resulting initially in an impasse declared by an experienced mediator. *See* ECF No. 218 at 5-6; *see In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d at 1345, 1349 (finding an absence of collusion where settlement was reached with some assistance of a well-qualified, experienced mediator).

After the impasse, the Parties litigated the case extensively and contentiously. After GEICO General hired additional and experienced class-action counsel, settlement talks resumed. ECF No. 218 at 6. However, settling was far from easy. It was made difficult owing to the numerous complexities of the issues and parties involved, and the extensive materials required for submission in connection with a proposed global class settlement for *all* GEICO entities, all tailored to the legal claims raised in this case and related BA Issue cases that were pending in state and federal courts. *See* ECF No. 213 at ¶¶ 4, 7-8. Among experienced counsel from both sides, there were countless oral and written negotiations and several exchanges of versions of draft agreements, proposed orders, claim forms, proposed notices. During this process, importantly, attorney's fees were not negotiated until after substantiative relief to the Settlement Class was fully agreed. *See* ECF No. 217-1 at 28, No. 226-1 at ¶ 13; *see also Ferron*, 2021 WL 2940240, at *8 (mentioning negotiation of fees after class relief as a fact that indicates that the settlement was non-collusive and reached at arm's length). There was no fraud or collusion regarding the Settlement and it was negotiated at arm's length.

### 2. *The fairness, reasonableness, and adequacy of the Settlement in light of the range of recovery favors final approval of the Settlement.*

The proposed Settlement is reasonable, fair, and adequate because it provides substantive and complete monetary relief to Settlement Class Members without requiring Settlement Class Members to risk the time, delay, and recovery inherently present when taking a PIP case to trial. *See Saccoccio*, 297 F.R.D. 683, 693 ("The range of possible recovery spans from a finding of non-liability to a varying range of monetary and injunctive relief. In considering the question of a possible recovery, the focus is on the possible recovery at trial."); *Ferron*, 2021 WL 2940240, at *10 (combing *Bennet* factors two and three).

Here, the Settlement provides Settlement Class Members with Settlement Benefits that are clearly fair and adequate compensation compared to what they might have been at trial and then some. There is no limited fund and no aggregate cap on Settlement Benefits. The monetary relief is commensurate with what a Settlement Class Member might recover on an individual basis through a PIP demand letter. *Compare* § 627.736(10)(d), Fla. Stat. Pursuant to the Settlement, Settlement Class Members are eligible to make claims for **100%** (i.e., the full 20% of billed amounts) of all covered charges they made for PIP claims under the Policy. Agreement § III ¶ I 1. They may also receive 10% interest and $9 in submission compensation for each Valid Claim Form submitted via U.S. Mail. *Id.* The Settlement value of just the cash portion of the Settlement made available to the Settlement Class is between $25,000,000.00 and $30,000,000.00. ECF No. 226-1 at ¶ 13; *see also Hall v. Bank of Am., N.A.*, No. 1:12-CV-22700-FAM, 2014 WL 7184039, at *8 (S.D. Fla. Dec. 17, 2014) (if notice is adequate, relief made available through settlement (rather than actually claimed) is the proper focus).

The Settlement benefits actually exceed what Settlement Class Members would have been able to recover at trial or with a pre-suit demand. *See Hall*, 2014 WL 7184039, at *5. The

Agreement calls for a waiver of the PIP post-payment defenses of reasonableness, relatedness, and medical necessity for purposes of this Settlement, which otherwise would have been available under the PIP Statute and potentially been a defense to payment of each class member at trial. Agreement § III ¶ I 2; *See* § 627.736(4)(b)6, Fla. Stat. Settlement Class Members may claim and receive payment more readily and easily and for more benefit than if the Settlement had not been reached. The Settlement calls for a liberal and fair claims process that is streamlined and less stringent than the demand letter requirement in the PIP statute. *See Poertner v. Gillette Co.* 618 Fed. Appx. 624, 628 (11th Cir. 2015); *see also Ferron*, 2021 WL 2940240, at *4 (S.D. Fla. July 13, 2021) (approving settlement providing relief based on submitting a "valid Claim Form"); *Janicijevic*, 2021 WL 2012366, at *6; *Williams v. Reckitt Benckiser LLC,* 20-23564-CIV, 2021 WL 8129371, at *20 (S.D. Fla. Dec. 15, 2021). The Claim Form simply requires identification of information readily available to the Settlement Class of providers and may be delivered electronically via the Settlement Website. *See* Agreement § III ¶ H, & Ex. B thereto. Settlement Class Members have the right to challenge the amounts of these payments and a cure procedure if their Claim Forms are deficient in some material respect. Agreement § III ¶ H 5 & ¶ K. In contrast, the PIP statute requires that providers make a demand that includes "an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due" and that the demand be sent only via certified mail. § 627.736(10)(b)3 & (c), Fla. Stat.

In addition, the Class Notice and administration process are paid for entirely by the GEICO Companies under the Settlement, which otherwise would likely be paid by Plaintiff and later deducted from any recovery won for the class. Agreement § III ¶ F. The Settlement also provides for injunctive relief on a going forward basis whereby the GEICO Companies will reimburse

claims raising BA Issues according to the claims adjustment process called for in the Agreement. Agreement § III ¶ L; *see Ferron,* 2021 WL 2940240, at *11 (noting value of programmatic relief); *Janicijevic*, 2021WL 2012366, at *6 (same).

Moreover, subject to Court approval, the GEICO Companies will pay Class Counsel's attorney's fees and costs of not more than $4,950,000.00, which were negotiated separately from Settlement Benefits and which will in no way reduce any payments or relief to Settlement Class Members and which if the case went to trial would likely have been deducted from any recovery for the class. Agreement § III ¶ M; *see also* ECF No. 226 (Plaintiff's motion for attorney's fees). These benefits are exemplary and well within the range of what would be considered fair, reasonable, and adequate relief considering the risk of continued litigation, absent a class settlement.

### 3. Likelihood of Success at Trial

The case was far from certain when filed. Since the inception of this Action and before, the GEICO Companies continually disputed Plaintiff's interpretation of the PIP Policy, the alleged "BA Issue," class certification, and any alleged wrongdoing or liability of any kind. Interpretation of the BA language has been mixed or unclear in various opinions and is far from settled. Some state county and circuit court opinions have sided with GEICO General's position. *See* ECF No. 226-1 at ¶ 38. While in recent months there have been cases that have discussed the alleged BA Issue, none have found, as was done in this Settlement, that all of claims with a BA reason code will be paid at 100% of the billed amount. *Id*.

GEICO General already prevailed on the issue of standing in a prior BA Issue case. *See A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co*., 925 F.3d 1205 (11th Cir. 2019). GEICO General revived its standing challenge at least twice here. ECF No. 33 at 6, No. 151 at 14-14.

Throughout the case, GEICO General also raised PIP post-claim defenses, which the Settlement waives; however, GEICO would likely revive and assert those defenses at trial given that the Agreement preserved those defenses for GEICO should the Settlement not be approved for any reason. Also, previous attempts to maintain class certification in the PIP area in this District have been rejected because of perceived individual issues leading to management problems, which the Settlement avoids. *See Randy Rosenberg, D.C., P.A. v. GEICO Gen. Ins. Co*., No. 19-CV-61422, 2019 WL 6828150, at *7-9 (S.D. Fla. Dec. 13, 2019) (noting or discussing the approximately eleven cases GEICO General cited in its motion or through notices of supplemental authority that had purportedly ruled against class certification in a PIP-related case). The Settlement finally and globally settles the alleged BA Issue and avoids all these uncertainties and obstacles and any further delay owing to potential further litigation and appeals on the BA Issue or class certification, based on standing or otherwise.

### 4. The expense, duration, and complexity of the Action and the BA Issue, and the stage they were settled, favor final approval.

This Action and the alleged BA Issue were significantly developed, so the Parties and counsel knew the strengths and weaknesses of their positions sufficiently enough to enter a reasonable settlement. *See Carter v. Forjas Taurus S.A*., No. 1:13-CV-24583-PAS, 2016 WL 3982489, at *9 (S.D. Fla. July 22, 2016). The alleged BA Issue has been contested since at least 2016. ECF No. 218 at 2-4. This BA Issue Action was itself thoroughly litigated for 33 months before it was settled after the pretrial process was essentially over. *See Wilson*, 2016 WL 457011, at *7 (noting litigation for one year to be sufficient time); ECF No. 218 at 4 (discussing significant pretrial motion practice).

During this time, each Party engaged in extensive investigation and discovery. ECF No. 218 at 4-5 (discussing discovery). The discovery materials here were complex and were produced

over a series of months, and it took months to review and digest them. *See* ECF Nos. 95 (Ex. E-G), 112, 114; ECF No. 226-1 at ¶¶ 22-30. Just retrieving specific historical claims files was an arduous, time-consuming task. *See* ECF No. 72-2 at ¶¶ 7-13. The review by Defendant alone was estimated to be of over 400,000 pages of hardcopy material and millions of lines of data across over tens of thousands of claims. ECF Nos. 88 at ¶ 12, 155-5 at ¶ 17. The extensiveness and complexity of the materials produced also necessitated that each side consult experts to analyze the materials produced and the key contested facts underlying the legal issues in the case. *See* ECF Nos. 92-1 at 59:11-62:16, 148-6 at ¶¶ 13-16. Each side in turn submitted expert reports and rebuttal expert reports on class and other issues. *See* ECF Nos. 148-5, 151-4, 155 (Ex. C), 159-1. All the foregoing gave each side more than "sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Wilson*, 2016 WL 457011, at *7.

### 5. *The positive reaction to the Settlement favors final approval of the Settlement.*

Finally, the reaction to the Settlement has been overwhelmingly positive, which strongly supports final approval. *See Gonzalez*, 2019 WL 2249941, at *5. JND received no objections to any aspect of the Settlement from any of the potential 28,818 Settlement Class Members. *See Jairam v. Colourpop Cosmetics, LLC*, No. 19-CV-62438-RAR, 2020 WL 5848620, at *7 (S.D. Fla. Oct. 1, 2020) (noting lack of objections weighs strongly in favor final approval). Nor has any governmental authority intervened or objected. There have only been 564 opt outs, which is only 1.9% of 28,818 potential Settlement Class Members. *See Burrow v. Forjas Taurus S.A.*, No. 16-21606-CIV, 2019 WL 4247284, at *10 (S.D. Fla. Sept. 6, 2019) (finding low opt-out rate weighs in favor of final approval).

## CONCLUSION

WHEREFORE, considering the extensive substantial Settlement Benefits of the proposed Settlement, the extensive Notice Program, the risks of the Action proposed to be settled, the overwhelmingly positive reaction of the Settlement Class, and the legal standards detailed herein, the proposed Settlement terms are such that the Court can easily conclude they are "fair, reasonable, and adequate." For the foregoing reasons, the Parties jointly respectfully request that the Court grant final approval of the proposed Settlement.

Dated: October 31, 2022

Respectfully submitted,

| | |
|---|---|
| **Edward H. Zebersky** | **John P. Marino** |
| Edward H. Zebersky, Esq. (FBN: 908370) | John P. Marino (FBN: 814539) |
| Michael T. Lewenz, Esq. (FBN: 111604) | Kristen L. Wenger (FBN: 92136) |
| Mark S. Fistos, Esq. (FBN: 909191) | Mark Drew Krieger, IV (FBN: 117800) |
| ZEBERSKY PAYNE SHAW LEWENZ, LLP | SMITH, GAMBRELL & RUSSELL, LLP |
| 110 Southeast 6th Street, Suite 2900 | 50 North Laura Street, Suite 2600 |
| Fort Lauderdale, FL 33301 | Jacksonville, Florida 32202 |
| Telephone: (954) 989-6333 | Phone: (904) 598-6100 |
| Facsimile: (954) 989-7781 | Facsimile: (904) 598-6204 |
| ezebersky@zpllp.com | jmarino@sgrlaw.com |
| mlewenz@zpllp.com | kwenger@sgrlaw.com |
| mfistos@zpllp.com | dkrieger@sgrlaw.com |
| and | and |
| **Alec Schultz** | **Peter D. Weinstein** |
| Alec Schultz, Esq. (FBN: 35022) | Peter D. Weinstein (FBN 0913502) |
| HILGERS GRABEN PLLC | Michael A. Rosenberg (FBN 95721) |
| 1221 Brickell Avenue, Suite 900 | COLE, SCOTT & KISSANE, P.A. |
| Miami, Florida 33131 | 600 North Pine Island Road, Suite 500 |
| Telephone: (305) 630-8304 | Plantation, Florida 33324 |
| aschultz@hilgersgraben.com | Telephone: 954-473-1112 |
| | Facsimile: 954-474-7979 |
| *Attorneys for Plaintiff* | Peter.Weinstein@csklegal.com |
| | Michael.Rosenberg@csklegal.com |
| | *Attorneys for the Defendant* |

[2337233/5]  19

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 31, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified in the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

**Edward H. Zebersky**
Edward H. Zebersky

## SERVICE LIST
*Rosenberg, etc. v. GEICO, USDC Case No. 0:19-cv-61422-CANNON/Hunt*

**Counsel for Defendant**

Peter D. Weinstein, Esq.
Michael A. Rosenberg, Esq.
**COLE, SCOTT & KISSANE, P.A.**
600 North Pine Island Road
Lakeside Office Center, Suite 500
Plantation, Florida 33324
Telephone:  954-473-1112
Facsimile: 954-474-7979
Peter.Weinstein@csklegal.com
Michael.Rosenberg@csklegal.com
Karen.Henley@csklegal.com
Romona.Gorwitz@csklegal.com

John P. Marino, Esq.
Kristen L. Wenger, Esq.
Mark Drew Krieger, Esq.
SMITH, GAMBRELL & RUSSELL, LLP
50 North Laura Street, Suite 2600
Jacksonville, FL 32202
Telephone: 904-598-6100
Facsimile: 904- 598-6204
jmarino@sgrlaw.com
kwenger@sgrlaw.com
dkrieger@sgrlaw.com